UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM R.,[1]

      Plaintiff,

  v.

MICHELLE KING,
Acting Commissioner of Social Security,[2]

      Defendant.

Case No. 1:23-cv-319-JMC-MJS

**REPORT AND RECOMMENDATION**

Plaintiff William R. ("Mr. R") seeks Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act") based on his mental and physical impairments. The Social Security Administration ("SSA" or the "Commissioner") entered a final decision denying Mr. R's application for benefits, and he now seeks reversal and remand. In doing so, Mr. R presses two primary arguments as to how the Administrative Law Judge ("ALJ") allegedly erred: (1) the ALJ did not properly account for Mr. R's moderate limitation in concentration, persistence, or pace in identifying his residual functional capacity ("RFC"); and (2) the ALJ did not fully and properly assess Mr. R's alleged physical impairments, including through a function-by-function analysis. The matter is referred to the undersigned for a report and recommendation. Following careful consideration of the administrative record, the parties' briefs, and the relevant law, the undersigned

---

[1] Plaintiff's name has been partially redacted in keeping with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, PRIVACY CONCERN REGARDING SOCIAL SECURITY AND IMMIGRATION OPINIONS (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (last visited Feb. 5, 2025) (encouraging the use of "only the first name and last initial" in Social Security cases).

[2] Effective January 20, 2025, Michelle King became Acting Commissioner of the Social Security Administration, so she is automatically substituted as the defendant under Fed. R. Civ. P. 25(d).

1

agrees with Mr. R's first argument but not his second, and so recommends **GRANTING IN PART** and **DENYING IN PART** both Mr. R's and the Commissioner's motions (ECF Nos. 7, 8) and remanding this case to the SSA for further review consistent with the analysis below.

## BACKGROUND

### I. Factual Overview

Mr. R was 58 years old when he applied for SSI benefits on December 21, 2020, alleging he has been disabled since October 1, 2019. (ECF No. 6, Administrative Record ("AR") at 157–66.)[3] His claim of disability is based on glaucoma, knee and back issues, carpal tunnel syndrome, knots on his toes, and post-traumatic stress disorder ("PTSD"). (*See id.* at 182.) Mr. R has a high school education and some college credits. (*Id.* at 183.) Based on the record, he has some training as a diesel mechanic and a limited amount of prior work in construction. (*See id.* at 448.)

### II. The ALJ Decision

To qualify for SSI benefits under the Act, a claimant must demonstrate a disability that renders him unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 1382(a)(1), 1382c(a)(3)(A). The SSA implements these statutory standards through a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920. Through that five-step process, an ALJ evaluates whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) could return to their past relevant work; and (5) if not, could perform any other work in the

---

[3] Page citations to the AR refer to the running pagination at the lower right margin. Page citations to the parties' briefing, by contrast, refer to the ones assigned by the Court's electronic filing system.

national economy. *See, e.g.*, *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004) (describing each step). At the first four steps, the claimant bears the burden of proof. *Id.* The burden shifts at step five, requiring the Commissioner to demonstrate that a claimant can perform "other work" available in the national economy, "based on a consideration of [his] 'residual functional capacity' (RFC), age, education and past work experience." *Id.*

The ALJ employed this five-step sequential process here. (AR at 15–26.) At step one, the ALJ found that Mr. R had not engaged in substantial gainful activity since the application date. (*Id.* at 17.) At step two, the ALJ found that Mr. R had severe impairments—specifically, depressive disorder, anxiety-related disorder, trauma-related disorder, and obesity—that significantly limit his ability to perform basic work activities. (*Id.*)[4] At step three, the ALJ concluded that Mr. R does not have a mental impairment or combination of mental impairments that meet or medically equal the criteria of the applicable regulatory listings: *i.e.*, listing 12.04 (depressive, bipolar, and related disorders), listing 12.06 (anxiety and obsessive-compulsive disorders), or listing 12.15 (trauma- and stressor-related disorders)—meaning only that Mr. R was not automatically deemed eligible for benefits based on such a showing. (*Id.* at 18.) As relevant here, though, the ALJ did find that Mr. R has a "moderate limitation" regarding "concentrating, persisting, or maintaining pace." (*Id.* at 19.) From there, leading into step four, the ALJ assessed Mr. R's residual functional capacity or "RFC," 20 C.F.R. § 416.920(e), which captures the most "an individual can do despite his or her limitations," S.S.R. 96–8p, 1996 WL 374184, at *1. Specifically, the ALJ determined that Mr. R had the RFC to perform "the full range of medium work as defined in 20 C.F.R. § 416.967(c), with the following limitations: able to perform simple, routine tasks; able to interact with coworkers

---

[4] The ALJ also considered evidence of other physical impairments—namely, right knee osteoarthritis, lumbar spine disorder, and glaucoma—but found these impairments were not shown to cause Mr. R more than a minimal limitation on his ability to perform basic work activities. (AR at 17–18.)

and the public on an occasional basis." (AR at 20.)[5] At step four, the ALJ determined that Mr. R had no past relevant work. (*Id.* at 24.) And finally, at step five—in reliance on the vocational expert, and based on Mr. R's RFC, age, education, and work experience—the ALJ concluded that Mr. R could perform jobs that exist in significant numbers in the national economy. (*Id.* at 24–25.)

Based on the five-step analysis, then, the ALJ determined that Mr. R was not "disabled" as defined by the Act and denied his application for benefits. (*Id.* at 25.)

## III. Procedural History

Mr. R's application was denied at both the initial and reconsideration levels. (AR at 15, 72, 82.) During the administrative hearing on April 19, 2022, Mr. R appeared with counsel, and the ALJ received testimony from Mr. R and a vocational expert. (*See id.* at 30–53.) On April 27, 2022, the ALJ issued a decision finding Mr. R not disabled. (*Id.* at 15–25.) On December 27, 2022, the Appeals Council denied Mr. R's request for review, making the ALJ's decision final. (*Id.* at 1.)

At that juncture, pursuant to 42 U.S.C. § 405(g), Mr. R timely sought judicial review, asking this Court to reverse or, alternatively, remand for reconsideration of the ALJ's decision. (*See* ECF No. 7 ("Pl.'s Mem."); ECF No. 11 ("Pl.'s Reply").) The Commissioner filed a cross-motion to affirm. (*See* ECF No. 8 ("Def.'s Mem.").) District Judge Jia M. Cobb referred the matter for a report and recommendation on the pending motions. (*See* Aug. 14, 2023 Min. Order.) That referral was recently reassigned to the undersigned, and this ruling now follows.

## LEGAL STANDARD

The Court reviews the Commissioner's denial of benefits to determine whether it was supported by substantial evidence and free of legal error. *Butler*, 353 F.3d at 999. This review is

---

[5] In SSA terms, "medium work" encompasses work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

4

limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations and quotation marks omitted); *see also Butler*, 353 F.3d at 999 (substantial evidence is "more than a scintilla, but … less than a preponderance").

The Court must "carefully scrutinize" the record for substantial evidence, but it may not reweigh the evidence considered, *Cunningham v. Colvin*, 46 F. Supp. 3d 26, 32 (D.D.C. 2014) (quotation marks omitted), as the Court's review is "highly deferential to the agency fact-finder," *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). In other words, the issue before the Court is not whether Mr. R is disabled, but rather whether the ALJ's findings were supported by substantial evidence and free of legal error. That said, an ALJ must build an "'accurate and logical bridge'" from the evidence to their conclusion so the Court can assess whether a connection exists between the record evidence and the ALJ's conclusions. *Lane–Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)). Importantly, the Court's review focuses on the rationale that was articulated by the ALJ, not *post hoc* rationalization the Commissioner might offer on appeal. *Ward v. Berryhill*, 246 F. Supp. 3d 202, 210 (D.D.C. 2017).

## DISCUSSION

As previewed, Mr. R challenges the ALJ's decision in two ways, both focused on how the ALJ defined his RFC. First, Mr. R argues that the ALJ failed to properly account for his moderate limitation in concentration, persistence, or pace. (Pl.'s Mem. at 5–9.) Second, Mr. R argues that the ALJ failed to properly assess his physical abilities to perform work-related activities, including through a function-by-function analysis. (*Id.* at 9–11.) The Court takes each argument in turn.

I.      **The RFC Does Not Adequately Account for Mr. R's CPP Limitation**

Mr. R argues that the ALJ erred in formulating his RFC because the RFC fails to account for the ALJ's earlier finding that Mr. R has a moderate limitation in concentration, persistence, and pace, commonly abbreviated as "CPP." (Pl.'s Mem. at 5–9.) In so arguing, Mr. R invokes a line of cases from this District for the proposition that a limitation to "simple, routine tasks"—without more—fails to adequately account for a claimant's moderate CPP limitation. The Commissioner, on the other hand, defends the ALJ's decision by arguing that it did adequately incorporate Mr. R's moderate CPP limitation. (Def.'s Mem. at 14–18.) On balance, the Court agrees with Mr. R.

Limitations in concentration, persistence and pace, or "CPP," "refer[] to the [claimant's] abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(E)(3). Here, the ALJ determined at step three that Mr. R. had a moderate limitation in CPP. (AR at 19.) A "moderate" limitation means the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c). Although the regulations do not define the term "fair" in this context, prior cases in this District spell out that a moderate CPP finding "establishes some deficit in the claimant's ability to sustain focused attention and concentration long enough to permit the timely and appropriate completion of tasks found in work settings." *Shea M. v. Kijakazi*, 2023 WL 3040602, at *17–18, *19 (D.D.C. Apr. 21, 2023) (cleaned up) (quoting *Nsiah v. Saul*, 2020 WL 12948519, at *14–16 (D.D.C. May 12, 2020)).

Here, the ALJ's formulation of Mr. R's RFC indicated that he could perform the "full range of medium work," restricted only by additional limitations to "simple, routine tasks" and "interact[ing] with coworkers and the public on an occasional basis." (AR at 20.) The ALJ did not otherwise articulate—certainly not within the RFC formulation itself—any additional limitations

6

associated with Mr. R's moderate CPP assessment. As Magistrate Judge Harvey has observed, "many ALJs attempt to account in the RFC for a 'moderate' CPP limitation by restricting the claimant to simple, routine, and/or repetitive work (or some derivation of those limitations)." *Shea M.*, 2023 WL 3040602, at *18. This may have been the ALJ's intent here, considering that the RFC did limit Mr. R to "simple, routine tasks." But plenty of cases in this District have been unwilling to accept that inferential leap at face value. As those cases reason, "the problem with finding a moderate CPP limitation by requiring 'simple, routine, and repetitive tasks,' is that such a restriction, without more, does not actually address [a claimant's] mental impairments because the *difficulty* of a task does not necessary say anything about his *ability to concentrate* on it." *Shea M.*, 2023 WL 3040602, at *18 (emphases added) (quoting *Johnson v. Saul*, 2021 WL 411202 at *5 (D.D.C. Feb. 5, 2021)); *Petty v. Colvin*, 204 F. Supp. 3d 196, 206 (D.D.C. 2016) (similar). The undersigned agrees. Without more, an ALJ's limitation to "simple, routine tasks"—or similar variations—is insufficient, standing alone, to address a claimant's moderate CPP limitation.[6]

But that is not the end of the analysis. As both sides recognize, those same cases have recognized that it can be possible for an ALJ to properly account for a moderate CPP finding with a "simple, routine task" limitation, so long as the ALJ separately explains their basis for concluding that no additional "limitations were necessary in light of the record." *Shea M.*, 2023 WL 3040602, at *20; *Lomax v. Comm'r of Social Sec.*, 2021 WL 3508087, at *10 ("[T]he door remains open for the ALJ to 'provide an explanation for why Plaintiff's mental limitations at step three did not translate into more detailed limitations in his RFC.'") (quoting *Perry*, 204 F. Supp. 3d at 204).

---

[6] The Commissioner does not even seem to be defending a contrary position in such categorical terms. Instead, as discussed next, the Commissioner's brief focuses on arguing why the ALJ "adequately explained" how a "simple, routine tasks" limitation did appropriately account for the moderate CPP limitation in Mr. R's specific case, based on other evidence in the record before the ALJ.

The Commissioner says the ALJ did so here, arguing that the ALJ "adequately explained why he assessed a limitation to simple, routine work, in particular (with additional limitations on social interaction), to account for [Mr. R's] concentration limitations." (Def.'s Mem. at 15.) Mr. R disagrees. He labels the Commissioner's arguments as impermissible "post-hoc rationalization." (Pl.'s Reply at 3, 4.) To resolve that disagreement, the Court proceeds to "search[] the ALJ's opinion for any explanation as to why the ALJ might have concluded that [additional] limitations were unnecessary in light of the record." *Shea M.*, 2023 WL 3040602, at *20.

The Commissioner focuses on a few points that supposedly reflect the Commissioner's "adequate explanation." (Def.'s Mem. at 15.) None persuades.

First, the Commissioner flags that the ALJ largely derived his assessment of moderate CPP limitation from the opinion of Dr. Gala—an opinion that, according to the Commissioner, "tends to support the ALJ's conclusion that Plaintiff *could* sustain concentration and pace in the work setting, so long as he was limited to simple tasks." (Def.'s Mem. at 15–16.) This is so, the Commissioner posits, because Dr. Gala opined that Mr. R could "understand, remember, or apply simple directions and instructions" with no limitation, with only a "mild limitation" in "sustain[ing] concentration and perform[ing] a task at a consistent pace," among other things. (AR at 387.) This is not an unreasonable interpretation. But the problem for the Commissioner is that the ALJ never articulated that interpretation. In other words, in discussing Dr. Gala's opinions (*see id.* at 23), the ALJ's decision never explains why the ALJ might have concluded that Dr. Gala's assessment would potentially justify the use of a "simple, routine task" limitation, without more, to address Mr. R's CPP limitation. It is not the Court's role to extrapolate that possibility based on legal arguments in the Commissioner's brief.

Second, the Commissioner notes that the ALJ found persuasive the state agency psychologists, Dr. Heiser and Dr. Cott, and the Commissioner's brief proceeds to spell out how those assessments described Mr. R's capabilities in the CPP space: "[Mr. R] would have difficulty sustaining attention and pace for complex tasks. [He] can sustain attention and pace to carry out simple tasks on a regular basis to complete a normal workweek." (Def.'s Mem. at 16 (citing AR at 60, 69).) From there, the Commissioner argues that these assessments support the idea that Mr. R did not need additional limitations for CPP purposes, so long as he is limited to performing simple tasks. Again, the Commissioner's interpretation of that evidence is not unreasonable. But again, that interpretation is not set forth or included in the ALJ's decision. The ALJ's reference to and discussion of those medical opinions (AR at 22–23) does not mention any differentiation between complex and simple tasks or otherwise discuss or adopt that rationale.

Third, the Commissioner points to other record evidence, including treatment records and Mr. R's own testimony, and argues that this evidence further justifies the ALJ's use of a "simple, routine task" limitation to account for Mr. R's moderate CPP limitation. (Def.'s Mem. at 17–18.) But as before, although the ALJ refers to much of the evidence that the Commissioner's brief highlights, the decision itself never explains how the ALJ's RFC assessment relied on that evidence to conclude that a "simple, routine tasks" limitation was sufficient to address the moderate CPP finding. The argument strikes the Court as yet another thread of *post hoc* rationalization.

Finally, the Commissioner stresses that Mr. R said that crowds are his primary PTSD trigger and suggests that the ALJ's companion limitation of only "occasional" interaction with coworkers and the public was intended to address that trigger and thereby "affect his ability to concentrat[e] and maintain pace." (Def.'s Mem. at 17.) But this is more of the same because the ALJ's decision

did not connect these dots in a meaningful enough way to explain why the RFC that was crafted was appropriately tailored to account for Mr. R's CPP limitation.

All told, the Commissioner's brief demonstrates that the ALJ *could have* built "a logical bridge from the evidence to his conclusion." *Lane-Rauth*, 437 F. Supp. 2d at 67 (quoting *Scott*, 297 F.3d at 595). But the Court must review the ALJ's decision as it stands; *post hoc* rationalization will not suffice. *Jones v. Astrue*, 647 F.3d 350, 356 (D.C. Cir. 2011) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)); *Williams v. Colvin*, 134 F. Supp. 3d 358, 364 (D.D.C. 2015) ("[T]he Commissioner's attempt to build a logical bridge post hoc is insufficient."). And as the ALJ's decision stands, the Court cannot discern any "adequate explanation" as to how the ALJ's RFC assessment was tailored to all of Mr. R's limitations, including in the realm of CPP.

The undersigned accordingly recommends that the Court remand on this basis.[7]

## II. The ALJ Did Not Err in Assessing That Mr. R Can Perform "Medium" Work

Mr. R separately argues for reversal on the basis that the ALJ did not properly assess his physical "abilities to perform work-related activities." (*See* Pl.'s Mem. at 9–10.) As Mr. R sees it, the ALJ erred in this regard by: (1) neglecting to carry out a function-by-function analysis of his functional limitations (*e.g.*, sitting, standing, walking, etc.) to sufficiently support a characterization of Mr. R's exertional work capability as "medium"; and (2) overlooking one

---

[7] The Court is mindful that some cases, even absent an adequate explanation by the ALJ, have nevertheless affirmed in similar contexts on a harmless error theory, where it was apparent from the "medical evidence in the record … that a claimant can engage in simple, routine tasks or unskilled work despite her limitations in concentration, persistence, and pace." *De Deaux v. Kijakazi*, 2022 WL 14760678, at *6 (D.D.C. Oct. 25, 2022) (cleaned up) (quoting *Perry*, 204 F. Supp. 3d at 206). But the Commissioner does not make a harmless error argument here and, in fact, expressly disclaims that argument. (Def.'s Mem. at 18 n.3 ("[A]pplying 'harmless error' analysis here would be inappropriate because there was no error.").) So the Court will not go there on its own. *See, e.g.*, *Shea M.*, 2023 WL 3040602, at *20 n.10 (refraining from harmless-error review in similar circumstances); *cf. Fares v. Smith*, 901 F.3d 315, 325–26 (D.C. Cir. 2018) (declining to consider lesser, alternative arguments where appellants relied exclusively on an "all-or-nothing" approach).

particular medical opinion that supposedly undermines the ALJ's broader finding that Mr. R could perform "medium" exertional work. The Court disagrees on both points.

*First*, as to Mr. R's argument about the asserted absence of a function-by-function analysis, that theory fails because it unduly elevates form over substance. As our Circuit has explained, a proper RFC analysis does call for a "'function-by-function' inquiry based on all of the relevant evidence of a claimant's ability to do work and must contain a 'narrative discussion' identifying the evidence that supports each conclusion." *Butler*, 353 F.3d at 1000 (quoting SSR 96-8p, 1996 WL 374184, at *3, *7). But that analysis need not be carried out in the sort of rigid manner that Mr. R seems to suggest. The ALJ is only required to engage in "*consideration* of all the factors, not *enumeration* of all the factors." *Jamil D. v. Kijakazi*, 2022 WL 910334, at *9 (D.D.C. Mar. 29, 2022) (quoting *Simmons v. Saul*, 2019 WL 12251882, at *13 (D.D.C. Sept. 30, 2019)); *Kim M. v. Kijakazi*, 2021 WL 4033060, at *7–8 (D.D.C. Sept. 3, 2021) ("[T]o the extent that Plaintiff contends that the ALJ's opinion must include an analysis that addresses in writing each and every work-related function listed in SSR 96-8p, that position has been rejected."). Put another way, "all the ALJ need do is provide a thorough narrative discussion of the evidence of record regarding Plaintiff's ability to perform relevant work-related functions in areas in which plaintiff alleged limitation." *Id.* (cleaned up); *Contreras v. Comm'r of Soc. Sec.*, 239 F. Supp. 3d 203, 207 (D.D.C. 2017) ("[W]hen the ALJ provided a thorough narrative discussion of [Plaintiff's] limitations, and has built a logical bridge from the evidence to his conclusion, the RFC analysis does not require written articulation of all seven strength demands.") (citation and quotation marks omitted).

The ALJ did this here. Despite Mr. R's insistence that the ALJ "failed to evaluate [his] abilities to sit, stand, walk, or lift" (Pl.'s Mem. at 10), the record demonstrates otherwise. The ALJ, in several places throughout the RFC assessment, addressed in narrative form Mr. R's ability to sit

(*see* AR at 21, 22), to stand (*see id.* at 20, 21), to walk (*see id.* at 20, 21, 22, 23–24), and to lift (*see id.* at 20, 22, 23), albeit in a manner that was woven into the ALJ's discussion of Mr. R's subjective symptoms and the medical evidence. While Mr. R—or his counsel—might favor a different format or structure, the substance of the analysis is what matters. And the ALJ's substantive approach was amply sufficient. *Jamil D.*, 2022 WL 910334, at *10 ("[T]he inquiry here is not whether the ALJ explicitly assessed each and every function, but whether the ALJ 'provided a sufficient discussion of the record evidence, connected that discussion to the limitation included in Plaintiff's RFC, and explained the' consideration of opinion evidence.") (quoting *Kim M.*, 2021 WL 4033060, at *8). So Mr. R gets it wrong in arguing the ALJ assessed his RFC in keeping with "medium work" "without identifying [his] functional limitations or restrictions." (Pl.'s Mem. at 10.)[8]

   ***Second***, as to Mr. R's remaining argument, it boils down to asking the Court to reweigh the same evidence that the ALJ considered, which the Court cannot do. *See Butler*, 353 F.3d at 999; *Gibson v. Kijakazi*, 643 F. Supp. 3d 78, 88 (D.D.C. 2022) ("The Court cannot reweigh the evidence."). As Mr. R tells it, the ALJ should have more strongly credited the opinion of Nurse Practitioner Ellison-Ruddock, who opined that Mr. R had "mild limitations for prolonged walking, standing, bending, and climbing stairs." (Pl.'s Mem. at 10.) According to Mr. R, that opinion should have led the ALJ to identify limitations as to "standing and/or walking in his [RFC] assessment." (*Id.*) But as the Commissioner points out, the ALJ did consider and discuss NP Ellison-Ruddock's opinion, finding it "somewhat persuasive." (Def.'s Mem. at 19 (citing AR at 23).) Of course, finding an opinion "somewhat persuasive" is not tantamount to a wholesale adoption of that opinion and all its facets. And as the ensuing discussion reflects, the ALJ weighed NP Ellison-

---

[8] To the extent that Mr. R is raising some sort of sequential challenge to the ALJ's discussion—*i.e.*, that the ALJ was wrong to announce his assessment about Mr. R's "medium work" capabilities before engaging in a discussion of his limitations—that chicken-and-egg argument fares no better. As the above discussion reflects, the Court is focused on the substance of the ALJ's written analysis over the form.

12

Ruddock's opinion against other evidence, "including [Mr. R's] reported performance of daily activities," among other things. (AR at 23–24.)[9] Based on "the totality of the evidence of record," then, the ALJ reasonably found that Mr. R could perform work at a medium exertional level. (*Id.* at 24.) Mr. R's heavy focus on one piece of the record fails to show otherwise.

## RECOMMENDATION

For these reasons, the undersigned recommends that Plaintiff's motion for judgment of reversal (ECF No. 7) and the Commissioner's motion for judgment of affirmance (ECF No. 8) both be **GRANTED IN PART** and **DENIED IN PART**, in keeping with the specific analysis above, and that the case be **REMANDED** to the SSA pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this recommendation.

\*   \*   \*

---

[9] Specifically, the ALJ acknowledged that the record contains evidence of right knee osteoarthritis, as well as evidence indicating that Mr. R was unable to walk on heels and toes and tandem walk. (*See* AR at 17, 21–22.) But the ALJ contrasted that with other evidence showing that Mr. R nonetheless ambulated with a normal gait; his squat was 50% full; he did not require help changing or getting on or off the exam table; he was able to stand from a chair without difficulty; he had full range of motion in his hips, knees, and ankles; his joints were stable and non-tender; and his lower extremity strength was perfect. (*See id.* at 21–22.) This is precisely the sort of evidence balancing entrusted to ALJs, not to be usurped by courts.

The Court hereby advises that, pursuant to 28 U.S.C. § 636(b)(1)(C) and LCvR 72.3(b), any party who objects to a report and recommendation must file a written objection within fourteen (14) days of the party's receipt of the report and recommendation. The written objections must specifically identify the portion of the report or recommendation to which objection is made and the basis for such objections. Failure to file timely objections to the findings and recommendations set forth in this report may waive that party's right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: February 5, 2025

                                                                               MATTHEW J. SHARBAUGH
                                                                               United States Magistrate Judge